# EXHIBIT D

# ABRAHAM FRUCHTER & TWERSKY LLP

Abraham Fruchter & Twersky LLP ("AF&T" or the "Firm") is a boutique litigation law firm that represents investors, in both individual and representative actions involving claims of corporate fraud, mismanagement, insider trading and breaches of fiduciary duties. Our Firm's overarching goal is to protect investors and maximize shareholder value through the diligent and capable representation of our clients.

The Firm, which is based in New York City and maintains an office in San Diego, California, is comprised of experienced lawyers who have represented individual and institutional investors in securities and shareholder litigation in both trial and appellate courts throughout the United States. Our Firm's lawyers pride themselves on their diligence, professionalism, courtesy, responsiveness, and capacity to deal with the most complex legal and factual issues. The Firm has experienced counsel available to handle any and all litigation matters. As a consequence of these qualities, skills and experiences, we have achieved impressive results in the cases we have litigated and have successfully litigated issues of first impression.

AF&T is one of the leading securities and shareholder class action firms in the nation and has been ranked among the top 20 plaintiff's law firms, according to Securities Class Action Services (SCAS 2009), a subsidiary of Institutional Shareholder Services.

## THE FIRM'S PRACTICE AREAS

### Securities Fraud Class Actions

AF&T's Securities Fraud Class Action Practice Area deals with cases brought on behalf of purchasers or sellers of securities and relates to the misrepresentation of, or failure to disclose, material facts to investors. These cases involve both individual and class action claims, as institutional and individual investors with large investment positions, at times consider opting out of class actions to pursue individual claims. The most common type of action in this practice area is brought on behalf of those who purchased securities in the open market and arises under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b). In order to prevail in a Section 10(b) action, a defendant must, among other things, have acted with intent or in reckless disregard of known facts. In situations where an investor has purchased securities issued pursuant to a registration statement and prospectus filed with the SEC, he or she may maintain an action pursuant to Sections 11 and 12(a)(2) of the Securities Act of 1933, 15 U.S.C. §§77k and 77l(a)(2), which enables a plaintiff to recover even if the defendant(s) only acted negligently rather than intentionally.

AF&T's lawyers have substantial experience and have achieved excellent results in many such shareholder actions, including *In re Global Crossing Securities Litigation*, 2005 U.S. Dist. LEXIS 16232 (S.D.N.Y.), in which our firm's lawyers acted as co-lead counsel for a sub-class consisting of purchasers of Asia Global Crossing securities.

Attorneys at AF&T helped achieve a recovery for the benefit of the Asia Global Crossing shareholders in an amount equal to 8% of the funds recovered in the entire Global Crossing case, when they only suffered 1% of the losses in the case.

AF&T was appointed as co-lead counsel in *In re Peregrine Systems, Inc. Securities Litigation*, 2002 U.S. Dist. LEXIS 27690 (S.D.Cal.), where we represent a class of people and entities who acquired Peregrine securities in exchange for shares of stock of certain companies that were acquired by Peregrine. Along with a class of open-market purchasers, a settlement of approximately $117.5 million was obtained to resolve all claims, despite the company's bankruptcy filing, the lack of any insurance proceeds to contribute to the settlement and the dissolution of Arthur Anderson, LLP, the company's auditor, which was responsible for certifying the relevant false and misleading financial statements. Of the settlement amount, approximately $65 million was obtained from individual corporate officers and directors, amounting to one of the largest recoveries from individual defendants in a case of this nature. As a result of AF&T's efforts, the investors the Firm represented (who acquired their Peregrine shares as a result of a stock exchange pursuant to a prospectus) received a recovery that was approximately three times greater than those shareholders who acquired their shares in the open markets.

*In re: Dreyfus Aggressive Growth Mutual Fund Litigation*, 98 CV 4318 (HB) (S.D.N.Y.), is a case in which members of our firm served on the executive committee of a class action brought on behalf of purchasers of two mutual funds for damages arising from misleading statements made in the offering prospectuses. The case was settled for $18.5 million in cash.

AF&T is currently or has recently served in a leadership position in several other class actions brought on behalf of securities purchasers. These include claims brought on behalf of purchasers of AirGate PCS, Inc., InVision Technologies, Inc., Printcafe Software, Inc., KhongZhong Ltd., Warner Chilcott Limited, Odimo, Inc., Worldspace, Inc., Internap Network Services Corp., Pzena Investment Management, Inc., Giant Interactive Group, Inc., Istar financial, Inc., ACA Capital Holdings, Inc. and Mechel OAO.

In addition, AF&T is often asked to participate in other major securities fraud litigations in which it is not a court designated lead counsel including, for example, the *In re Initial Public Offering Case* brought against the major underwriting firms with respect to alleged malfeasance in underwriting and post-underwriting market-making activities in certain "hot" initial public offerings.

**Insider Trading Actions**

AF&T's Insider Trading Practice Area focuses on both federal and state law claims that seek to remedy and/or prevent unlawful insider trading by corporate insiders. One type of case involving insider trading brought by the Firm involves actions for short-swing insider trading arising under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b). The Firm's attorneys are among the leading experts in the nation

with respect to this particular type of litigation, and have been at the forefront of obtaining favorable court rulings that have both enabled substantial recoveries for the ultimate benefit of investors and helped prevent future acts of corporate malfeasance associated with short-swing insider trading.

In one such case, AF&T successfully negotiated a cash settlement of $20 million despite the Securities and Exchange Commission (the "SEC") having taken the position that there was no Section 16(b) liability.  That case is one of many cases in which our firm has achieved multi-million dollar settlements from persons charged with violating the restrictions imposed on insider trading by Section 16(b).  In another such case, AF&T achieved a $9.4 million settlement following a successful appeal to the U.S. Court of Appeals for the Eleventh Circuit in a Section 16(b) action involving a corporate defendant whose CEO served on the issuer's board of directors.

In another case, the United States Court of Appeals for the Third Circuit resolved, in a manner that was consistent with the position advocated by the Firm, certain issues of first impression relating to the scope and interpretation of Rule 16b-3 and Rule 16b-7 promulgated by the SEC pursuant to the Securities Exchange Act of 1934 [17 C.F.R. §§240.16b-3 and 240.16b-7] (*Levy v. Sterling Holding Company*, 314 F. 3d 106 (3rd Cir. 2002)).

In addition to bringing cases under Section 16(b), AF&T has been at the forefront of efforts to cause corporate insiders to disgorge the proceeds of insider trading profits earned during the time period the issuer's financial results were improperly reported or other material facts were improperly concealed from members of the investing public. These cases have involved asserting claims arising under state law principles of fiduciary duty in shareholder derivative actions which are described in the section below.

**Shareholder Derivative Actions**

AF&T's Shareholder Derivative Actions Practice Area focuses on actions brought by shareholders of a corporation in order to obtain a recovery for that corporation from a corporate insider or other party for a violation of state or federal law that has caused damage to the corporation.  Often, these actions are directed at requiring corporate insiders to disgorge the proceeds of insider sweetheart deals that deprive the company and its public shareholders of the true value of the assets involved or at insiders exploiting their positions for personal gain.  Many of these actions result in agreed upon remedial corporate governance changes designed to prevent recurrent wrongdoing.

Among the shareholder derivative cases in which members of the Firm have taken a leading role was a case brought on behalf of HealthSouth Corporation in the Delaware Court of Chancery, in which a judgment was obtained against Richard Scrushy, the former Chief Executive Officer of HealthSouth, requiring him to disgorge more than $17 million in proceeds from insider trading in HealthSouth stock.

Our Shareholder Derivative Actions Practice Area also extends to cases involving the reckless management of a company's operations that causes damage to the company. One action making such allegations in which members of the Firm played a leading role was a shareholder derivative action brought on behalf of the Bank of New York Corporation against corporate insiders with respect to the damage caused to the company by their failure to properly institute the internal controls necessary to prevent money laundering. After the denial of a motion to dismiss, the taking of substantial pre-trial discovery and the defeat of an effort to have the case decided by a special committee, the case was resolved for a cash payment of $26.5 million for the benefit of the Bank of New York.

AF&T's Derivative Actions Practice Area places great emphasis on achieving substantive corporate governance reform. Members of the Firm had a leading role in gaining significant and valuable remedial benefits designed to prevent a recurrence of corporate malfeasance at the subject of shareholder litigation against ImClone Systems Inc., in addition to gaining a cash payment of $8.75 million. In addition, the Firm acted as lead counsel in a derivative shareholder against Merck & Co. related to the company's misconduct surrounding its pain reliever Vioxx. The Firm successfully brought about material corporate governance reform, which the presiding Judge described as "far reaching and act[ing] to position Merck at the forefront of sound corporate governance and risk management practices," "ensur[ing] scientific integrity and drug patient safety," and "provid[ing] substantial benefit to Merck and its shareholders because they may serve to prevent future liability from sale of potentially dangerous drugs." The corporate governance changes, which provide, *inter alia*, for a Chief Medical Officer to act as an advocate for patient safety, were similarly praised by industry analysts as something "every pharma company should have…."Likewise, in *In re Schering-Plough Corp. Shareholders Derivative Litig*., Master Derivative Docket Civ. Action No. 01-1412, 2008 U.D. Dist. LEXIS 2569 (D. N.J. Jan. 14, 2008), the Firm was responsible for obtaining comprehensive corporate governance changes at Schering-Plough Corporation.

Additionally, AF&T's attorneys are currently or have recently taken a leading role in shareholder derivative actions brought on behalf of, among others, Southern Peru Copper, Tenet Health Systems, MedcoHealth Solutions, Inc., El Paso Corporation and Escala Group, Inc.

**Corporate Transactions/Shareholder Rights**

AF&T's Corporate Transactions/Shareholder Rights Practice Area handles cases dealing with transactions in which the interests of minority shareholders or limited partners are eliminated through either the sale of the entity's underlying assets or through the sale of the entity itself. Such transactions often provide a tempting opportunity for corporate officers to advance the financial or corporate interests of the controlling shareholder(s) or general partner(s) at the expense of minority investors. These cases often arise under Section 14(a) of the Securities Exchange Act of 1934 and state law principles requiring corporate officers and controlling shareholders to discharge their fiduciary duties with loyalty, care and prudence.

Members of the Firm have been active in this area of practice that has recently attracted the attention of public pension funds. In one case brought on behalf of the limited partners of a series of limited partnerships controlled by Jones Intercable, Inc., a settlement of $10.5 million was achieved. In another case arising out of the sale of the last cable television system owned by American Cable TV Partners V, L.P., a settlement of $5 million was achieved. In yet another case, the Firm obtained an approximately 20% increase in the price offered in a management buyout of the minority interests of an investment trust. Our firm also represented an investor as lead plaintiff in a class action in New York State Supreme Court arising out of a reverse-split/going private transaction and obtained a settlement effectively doubling the compensation to be paid to the minority/public shareholders. In another case involving a publicly traded Real Estate Investment Trust, we obtained substantial additional disclosures which resulted in a contested auction process that ultimately achieved an increase in the compensation paid to minority/public shareholders.

Members of the Firm have also been active in similar cases brought on behalf of shareholders of publicly traded companies that are widely held where it appears that the price being offered is inadequate. One such case was *In re Ugly Duckling Corp. Shareholders' Derivative and Class Litigation*, C.A. No. 18746 (Del. Ch.), which settled for a $9 million increase in the price of a proposed tender offer made by a controlling shareholder. In another similar case, *In re CFSBDirect Tracking Stock Shareholder Litigation*, C.A. No. 18307 (Del. Ch.), the claims were settled for a $36.4 million or a 50% increase in the price offered by a controlling shareholder in a tender offer.

## LITIGATION ACHIEVEMENTS

The following is a representative list of some of the many favorable settlements achieved by AF&T's attorneys as a result of their diligence and sagacity:

*In re Peregrine Securities Litigation* **(S.D. Cal.):** achieved a settlement of approximately $117.5 million despite the company's bankruptcy, the lack of insurance proceeds to contribute to the settlement, and the dissolution of the company's auditors, which certified the company's relevant financial statements;;

*In re: CFSB Direct Tracking Stock Shareholder Litigation* **(Del. Ch. Ct.):** achieved a $36.4 million recovery on behalf the class of investors, equaling a 50% increase in the price offered by a controlling shareholder in a tender offer;

*In re: Bank of New York Corporate Derivative Litigation* **(S.D.N.Y):** achieved a $26.5 million cash recovery and substantial corporate governance changes in a shareholder derivative action brought on behalf of a major New York bank defrauded by unlawful money laundering;

*Levy v. Southbrook International Investments, Ltd., et al* **(S.D.N.Y):** achieved a $20 million cash settlement, the largest then known cash recovery for claims

arising under Section 16(b) of the Securities and Exchange Act of 1934. The presiding Judge John S. Martin commended the Firm, stating, "counsel's effort here provided a bonanza to the corporation . . . as the sole result of the diligence and sagacity of Plaintiff's counsel." (2001 U.S. Dist. LEXIS 7097, at * 20 (S.D.N.Y. May 31, 2001));

***Rosenberg v. Delta Airlines, Inc*. (D. Del.):** achieved a settlement valued at $38 million in. an action commenced in against Delta Air Lines on behalf of Priceline.com for violations of the insider trading provisions of Section 16(b);

***Levy v. Office Depot, Inc* (11th Cir.):** achieved a $9.4 million cash settlement after a successful appeal to the U.S. Court of Appeals for the Eleventh Circuit in an action alleging that as a consequence of the CEO of Office Depot serving on the Board of Purchasepro.com, Office Depot's short-swing trades in Purchasepro.com securities were in violation of Section 16(b);

***Lawrence v. Gouldd, et al.* (D. Nev.):** achieved a settlement valued at $30 million after two weeks of trial in a class action pursuant to Section 12 of the Securities Act of 1933 and the Nevada Deceptive Business Practices Act for the alleged operation of a pyramid scheme;

***In re Ugly Duckling Corp. Shareholders' Derivative and Class Litigation* (Del. Ch. Ct.):** achieved a $9 million increase in the price of a proposed tender offer made by a controlling shareholder of the Ugly Duckling Corporation.;

***In re: Dreyfus Aggressive Growth Mutual Fund Litigation*:** achieved an $18.5 million cash settlement in a class action brought on behalf of purchasers of two mutual funds for damages arising from alleged misleading statements made in offering prospectuses.

**FIRM ATTORNEYS**

**Partners**

*Jeffrey S. Abraham*

Following his graduation from Columbia University School of law in 1987, Mr. Abraham worked for one year as a corporate securities lawyer for a mid-size New York City law firm. Thereafter, Mr. Abraham joined what, at the time, was the largest firm specializing in plaintiffs' securities litigation, a firm then known as Milberg Weiss Bershad Specthrie & Lerach. After working at Milberg Weiss for several years, Mr. Abraham left to start the Law Offices of Jeffrey S. Abraham, which subsequently merged with and into Fruchter & Twersky, LLP, which thereafter changed its name to Abraham Fruchter & Twersky, LLP.

Mr. Abraham's practice at Milberg Weiss focused on the prosecution of shareholder class actions on behalf of defrauded investors with the occasional representation of corporate clients in various litigation matters. Among the class actions which he was active in prosecuting during his tenure at Milberg Weiss were *In Re Crazy Eddie Securities Litigation*, 97 Civ. 87-0033 (E.D.N.Y.) in which a recovery in excess of $76 million was achieved for defrauded investors, and *Axton Candy & Tobacco Co., Inc. v. Alert Holdings Inc., (Alert Holdings Income Limited Partnership Litigation)*, 92-Z-1191 (D. Colo.), in which a recovery of $60 million was achieved for defrauded investors. Mr. Abraham also successfully defended the appeal challenging the terms of that settlement before the Tenth Circuit. *See Hillman v. Webley*, 1996 U.S. App. LEXIS 25702 (10th Cir. 1996).

At AF&T, Mr. Abraham continues to focus on securities and shareholder litigation. During his tenure at the Firm, Mr. Abraham has served as lead counsel in many cases, including: *In re Peregrine Securities Litigation*, Civil No. 02cv870-J (S.D. Cal.) in which a settlement of approximately $117.5 million was achieved notwithstanding the company's bankruptcy, the lack of insurance proceeds to contribute to the settlement, and the dissolution of the company's auditors who shared liability. In another case, Mr. Abraham acted as co-lead counsel on behalf of purchasers of the securities of Asia Global Crossing in connection with *In Re Global Crossing Securities Litigation*, 02 CV 910 (S.D.N.Y.) in which a pro rata recovery was achieved for the Asia Global Subclass members that far exceeded the pro rata recovery obtained by the other defrauded investors in Global Crossing securities.

On another occasion, in a case arising under the short-swing insider trading provisions of Section 16(b) of the Securities Exchange Act of 1934, Mr. Abraham assisted in achieving a cash recovery of $20 million (without the benefit of insurance coverage) which at the time was the largest known cash recovery under that statute. Judge John S. Martin, Jr., the former U.S. Attorney for the Southern District of New York and the presiding Judge in the action, complimented the Firm's performance in the case in stating "the shareholders of Illinois Semiconductor Company received a $20,000,000.00 benefit as the sole result of the diligence and sagacity of Plaintiff's counsel." *Steriner v. Williams; Levy v. Southbrook Int'l Investments, Ltd.*, 2001 U.S. Dist. LEXIS 7097, at * 20 (S.D.N.Y. May 31, 2001).

Other cases in which Mr. Abraham has had a primary litigation role include: *City Partnership Co. v. Jones Intercable, Inc.*, Civil Action No. 99-WM-1051 (D. Colo.), in which a recovery of $10 million was achieved on behalf of investors with respect to the sale of cable television systems and *City Partnership Co. v. IR-TCI Partners V, L.P.*, Civil Action No. 99-RB-2122 (D. Colo.) in which $5 million was recovered on behalf of limited partners with respect to the sale of a cable television system to a business affiliate of the general partner.

Mr. Abraham has successfully argued appeals in the U.S. Courts of Appeals for the Second, Third, Tenth and Eleventh Circuits.

7

Mr. Abraham is admitted to practice in the Courts of the State of New York, the United States District Courts for the Southern District of New York, Eastern District of New York and District of Colorado, and the U.S. Courts of Appeal for the Second, Third, Fourth, Seventh, Ninth, Tenth and Eleventh Circuits as well as before the U.S. Supreme Court.

### *Jack G. Fruchter*

Mr. Fruchter is a 1992 *cum laude* graduate of the Benjamin N. Cardozo School of Law.  Prior to founding the law firm of Fruchter & Twersky, LLP whose name was later changed to Abraham Fruchter & Twersky, LLP, Mr. Fruchter was employed by the enforcement division of the U.S. Securities and Exchange Commission as well as a litigation associate at the law firm of Hughes Hubbard and Reed LLP in New York City.

Mr. Fruchter has played a lead role in many of the securities fraud class actions litigated by our firm, including AirGate PCS, Inc., Printcafe Software, Inc., KhongZhong Ltd., Warner Chilcott Limited, and Odimo, Inc.

In *Liberty Capital Group, Inc. v. Kongzhong Corporation*, 04-CV06746SAS (S.D.N.Y.), for example, Mr. Fruchter took the lead in a securities class action alleging that the issuer's registration statement in connection with an IPO failed to disclose that the issuer had breached its service agreement with its primary customer, China Mobile Communications Corporation, resulting in sanctions against the issuer and a strained relationship with the customer.  The case settled for 20% of the maximum provable damages, which is well in excess of the average recovery of 2-3% of damages in securities fraud litigation.

Mr. Fruchter has also focused on short-swing insider trading actions pursuant to the provisions of Section 16(b) of the Securities Exchange Act of 1934.  Mr. Fruchter has appeared at SEC staff meetings to discuss pending issues concerning Section 16(b) litigation and has been referred to as a leading practitioner in the field of Section 16(b) litigation. Romeo & Dye, Comprehensive Section 16 Outline 288 (June 2003).

Mr. Fruchter is admitted to practice in the Courts of the State of New York, the United States District Courts for the Southern and Eastern Districts of New York and the United States Courts of Appeals for the Third and Eleventh Circuits.  Mr. Fruchter has also routinely appeared *pro hac vice* in Courts throughout the United States.

### *Mitchell M.Z. Twersky*

Following his graduation from the Georgetown University Law Center in 1991, Mr. Twersky was employed for several years as a commercial and civil litigation associate for a boutique litigation firm in New York City.  In 1996 he founded the law firm of Fruchter & Twersky, LLP, which later changed its name to Abraham Fruchter & Twersky, LLP.

At Abraham, Fruchter & Twersky, LLP, Mr. Twersky has focused on, among other things, short-swing insider trading actions pursuant to the provisions of Section 16(b) of the Securities Exchange Act of 1934. Mr. Twersky played a lead role in *Levy v. Office Depot, Inc.*, in which a shareholder of Purchasepro.com alleged that as a consequence of the CEO of Office Depot serving on the Board of Directors of Purchasepro.com, Office Depot's trades in Purchasepro.com securities violated the insider trading provision of Section 16(b). Following PurchasePro.com's bankruptcy filing, AF&T was retained by the Debtor with the Bankruptcy Court's approval to continue with the prosecution of the action on the Debtor's behalf. The case settled for $9.4 million, more than half of the recoverable profits, after the Firm's successful appeal to the U.S. Court of Appeals for the Eleventh Circuit.

Mr. Twersky also played a lead role in a settlement valued at $38 million in *Rosenberg v. Delta Airlines, Inc.*, an action commenced in Delaware District Court against Delta Air Lines on behalf of Priceline.com for violations of the insider trading provisions of Section 16(b). He also played a lead role in a $20 million cash settlement of a Section 16(b) action in *Levy v. Southbrook International Investments, Ltd., et al.* brought in U.S. District Court for the Southern District of New York where Judge John S. Martin, Jr. in praising AF&T's work stated "counsel's effort here provided a bonanza to the corporation . . . as the sole result of the diligence and sagacity of Plaintiff's counsel." 2001 U.S. Dist. LEXIS 7097, at * 20 (S.D.N.Y. May 31, 2001).

Mr. Twersky has appeared several times at SEC staff meetings to discuss pending issues concerning Section 16(b) litigation, has provided the SEC with written comments concerning the proposed promulgation of SEC Rules pertaining to Section 16(b) (Comments with respect to *Proposed Rule: Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Release Nos. 34-49895, 35-27861, IC-26471* (June 21, 2004), available at www.sec.gov) and has been referred to as a leading practitioner in the field of Section 16(b) litigation. Romeo & Dye, Comprehensive Section 16 Outline 288 (June 2003).

Mr. Twersky has also played a leading role in AF&T's consumer class action litigation. Mr. Twersky achieved a favorable ruling from a New York State Appellate Court on an issue of first impression barring mortgage lenders from charging New York State residents a fax fee in connection with the provision of mortgage payoff statements and holding that consumers had an implied private right of action to recover any such fees paid. The decision was "Decision of the Day" in the November 19, 1999, edition of The New York Law Journal and is reported as *Negrin v. Norwest Mortgage, Inc.* (163) A.D.2d 39, 700 N.Y.S.2d 184 (2d Dep't 1999).

In a case the Firm brought on behalf of consumers across the country against the four largest sunscreen manufacturers in the U.S. alleging the false advertising and labeling of sunscreen products, Mr. Twersky played the lead role in the case and in obtaining a favorable ruling on issues relating to the federal preemption of state law claims, primary jurisdiction, and related doctrines. The case is currently pending in the

9

Superior Court of California, Los Angeles County. *In re Sunscreen Cases*, JCCP 4352 (Sup. Ct. Cal.).

Mr. Twersky has been interviewed and quoted widely by the media, including the Los Angeles Times, the New York Times, the New York Post, the Miami Herald, and the Wall Street Journal. Mr. Twersky has also appeared on television and radio programs, including NBC's Today in New York, Comcast's Nitebeat, and National Public Radio's Marketplace.

Mr. Twersky has served on the Federal Regulation of Securities Committee of the American Bar Association as well as its Civil Litigation and SEC Enforcement Matters and Annual Review of Federal Securities Regulation Subcommittees.

Mr. Twersky is admitted to practice in the Courts of the State of New York, the United States District Courts for the Southern and Eastern Districts of New York, the U.S. Courts of Appeal for the Second, Third, Seventh, and Eleventh Circuits, and the Supreme Court of the United States of America. Mr. Twersky has also routinely appeared *pro hac vice* in Courts throughout the United States.

**Counsel to the Firm**

*Atara Hirsch*

Ms. Hirsch concentrates her practice in securities litigation and institutional investor relations. Ms Hirsch is a graduate of Brooklyn Law School and is admitted to practice before the Courts of the State of New York, the United States District Court for the Southern District of New York and the United States District for the Eastern District of New York.

Ms. Hirsh serves as the Firm's Director of Institutional Relations, advising public and private institutions throughout the world with respect to shareholder rights related to class action and individual direct action claims arising under U.S. federal and state securities laws. Ms. Hirsh is a frequent speaker on securities litigation issues, particularly as they relate to the rights and responsibilities of institutional investors. Ms. Hirsh has addressed the National Conference on Public Employee Retirement Systems, the Native American Finance Conference and the Florida Public Pension Trustees Association, and has authored, "Custodians Leave Investor Money on the Table" (*PERSist*, National Conference on Public Employee Retirement Systems (Fall 2009,) detailing the myriad of issues that may arise when pension funds rely solely on their custodians to monitor their stock portfolio.

*Lawrence D. Levit*

Lawrence D. Levit is a 1976 graduate of Franklin and Marshall College. He also received an M.A. in political science from the Eagleton Institute of Politics in 1978. Mr. Levit is a 1985 graduate of Brooklyn Law School where he was the Second Circuit Editor

for the Law Review. He published an article entitled: *Habeas Corpus and the Exhaustion Doctrine: Daye Lights Dark Corner of the Law*, 50 Brooklyn Law Review 565 (1984).

Mr. Levit has specialized in class action litigation for approximately twenty years, primarily representing shareholders and consumers. Prior to joining AF&T, Mr. Levit was a partner at a mid-size law firm until 2002, where he was involved in actions that recovered hundreds of millions of dollars for class members. While at AF&T, he has served as co-lead counsel in *In re Peregrine Systems, Inc. Securities Litigation*, No. 02-CV-0870-BEN (RBB) (S.D. Cal),representing a class of claimants for violations of the federal securities laws. A settlement was obtained for approximately $117.5 million, with approximately $65.5 million of that amount being obtained from individual corporate officers and directors, one of the largest recoveries directly from individuals in a case of this nature. The investors represented by the Firm – *i.e.*, those who acquired their Peregrine shares as a result of a stock exchange pursuant to a prospectus) received a recovery that was approximately three times greater than shareholders who acquired their shares by purchasing them on the open market. In another recent action, *Liberty Capital Group, Inc. v. KongZhong Corp.*, No. 1:04-CV-06746-SAS (S.D.N.Y.), Mr. Levit served co-lead counsel and was responsible for settling the action for 20% of the maximum provable damages, well in excess of the average recovery of 2-3% of damages in securities fraud litigation.

Mr. Levit is a member of the New York and New Jersey bars and is admitted to practice before the United States District Courts for the Southern District of New York, the Eastern District of New York and the District of Colorado as well as the United States Courts of Appeal for the Second and Fourth Circuits.

### *Ian D. Berg*

Mr. Berg concentrates his practice in the area of securities litigation on behalf of public and private institutional investors, and has helped obtained significant recoveries on behalf of class members in several nationwide securities class actions, including *In re Tyco, International Securities Litigation* ($3.2 billion), *In re Initial Public Offering* ($586 million) and *In re Delphi Corporation Securities Litigation* ($325 million).

Mr. Berg has also helped resolve individual direct action claims on behalf of institutional funds, many of whom elected to opt-out of class action settlement recoveries. Recently, Mr. Berg helped several prominent mutual funds and a respected investment advisor resolve individual claims against Marsh & McLennan Companies, at a substantial premium to what they otherwise would have recovered by participating in the $400 million class action settlement.

Mr. Berg has also published several articles advising institutional investors regarding securities class action litigation. Recently, Mr. Berg has authored or co-authored the following articles: "Why Institutional Investors Opt-Out of Securities Fraud Class Actions and Pursue Direct Individual Actions" (*PLI Securities Litigation and Enforcement Institute*, July 23, 2009); "Credit Rating Agencies: Out of Control and in

Need of Reform" (*Securities Litigation & Regulation Reporter,* June 30, 2009); "Ruling Warns Funds to Follow Class Actions" (*Pensions &Investments*, December 8, 2008); and "The 7th Circuit Sends a Strong Message: Institutions Must Monitor Securities Class Actions Claims" (*The NAPPA Report*, August 2008).

Mr. Berg is a graduate of Northwestern University (B.A.) and the Northwestern University School of Law (J.D.). While in law school, Mr. Berg participated in the Small Business Opportunity Center, a non-profit, student-based clinical program that provides affordable legal services to entrepreneurs and non-profit organization focusing on job creation and economic development in the Chicago area.

Mr. Berg is admitted to practice in California, Pennsylvania and Illinois, as well as before the Southern District of California, Northern District of California and the District of Colorado.

**Additional Attorneys**

*Takeo A. Kellar*

Mr. Kellar practices out of the firm's San Diego office and concentrates his practice in the area of securities litigation on behalf of public and private institutional investors. Prior to joining Abraham, Fruchter & Twersky, LLP, Mr. Kellar practiced securities litigation at Bernstein, Litowitz, Berger & Grossmann LLP, where he prosecuted securities fraud and derivative shareholder actions on behalf of institutional investors. Mr. Kellar has helped obtain significant recoveries on behalf of class members in several nationwide securities class actions, including *In re William Securities Litigation* ($311 million)*, In re Maxim Integrated Products, Inc. Securities Litigation* ($173 million), *In re New Century Securities Litigation* ($125 million) and *Atlas v. Accredited Home Lenders Holding Co*. ($22 million settlement). Mr. Kellar also worked on the trial team responsible for successfully prosecuting the *In re Clarent Corp. Securities Litigation*, which resulted in a favorable jury verdict for shareholders against the company's former CEO. In addition, Mr. Kellar has assisted in successfully prosecuting and settling important shareholder derivative cases pertaining to corporate waste such as the Apollo Group, Inc. and the Activision, Inc. stock option backdating cases.

Mr. Kellar is a graduate of the University of California, Riverside (B.A.) and the University of San Diego School of Law (J.D.). Mr. Kellar is admitted to practice in the State of California and before the United States District Courts for the Northern, Central and Southern Districts of California.

*Ximena R. Skovron*

Ms. Skovron is an associate in AF&T's New York office where she focuses her practice on securities class actions, shareholder derivative actions, insider trading and consumer fraud. Ms. Skovron has represented institutional shareholders in complex

securities class actions including the Board of Trustees of the City of Ft. Lauderdale General Employees' Retirement System v. Mechel OAO, et al. a case against one of the largest coal and steel companies in the Russian Federation, and Silverstrand Investments, et al. v. AMAG Pharmaceuticals, a case against a biotechnology company alleging misrepresentations concerning the safety profile of Feraheme®, an intravenous iron therapy drug, in connection with a securities offering valued at $156 million. Ms. Skovron also has considerable expertise in and has successfully prosecuted numerous insider trading actions on behalf of shareholders, including Analytical Surveys, Inc. v. Tonga Partners L.P. and is also currently litigating In re Sunscreen Cases, a multi-million dollar consumer fraud class action alleging false labeling of sunscreen products which has received nationwide attention from the media, including National Public Radio and The New York Times.

Ms. Skovron attended the University of Miami School of Law where she graduated with honors. While in law school, she served as Editor in Chief of the University of Miami International and Comparative Law Review and was a distinguished member of the moot court board, where as part of a 3-member team, she won a preeminent national moot court competition presided over by judges from the U.S. Courts of Appeals for the Third, Fifth and Eighth Circuits and was awarded Best Brief for her writing. Ms. Skovron is admitted to practice in the state of New York, the U.S. Courts for the Southern and Eastern Districts of New York as well as the U.S. Court of Appeals for the Second Circuit.

### *Gilaad Deutsch*

Mr. Deutsch is a graduate of the University of Toronto Faculty of Law (J.D.) and the Yeshiva University Syms School of Business (B.S. Accounting). He has worked extensively in the field of shareholder and securities litigation since 2000. He is admitted to practice in the province of Ontario, the State of New York, and before the United States District Courts for the Southern and Eastern Districts of New York. Mr. Deutsch is also a Certified Public Accountant (CPA) and Chartered Financial Analyst Charterholder (CFA).

Mr. Deutsch supervised a team of attorneys responsible for discovery pertaining to one of the largest named defendants in the *In re Initial Public Offering Case* and was responsible for the analysis of trading records.

### *Arthur Chen*

Mr. Chen is a 2005 graduate of the Albany Law School and served as Student Editor for the New York State Bar Association Business Law Journal. Mr. Chen is admitted to practice before the Courts of the State of New York and the United States District Court for the Southern District of New York.

*Philip T. Taylor*

  Mr. Taylor is a 2006 graduate of the New England School of Law. Mr. Taylor, born in Montreal, Canada, obtained a B.Comm. (finance, *with distinction*) from Concordia University (John Molson School of Business). During law school, Mr. Taylor worked full-time as a law clerk for the Massachusetts Department of Public Safety and held internships at the Massachusetts Appellate Tax Board and the Boston Stock Exchange. Mr. Taylor is a member of the New York City Bar Association and serves on its Federal Legislation Committee. Mr. Taylor is admitted to practice before the Courts of the State of New York and the United States District Court for the Southern District of New York.