KESSLER TOPAZ MELTZER & CHECK, LLP
Ramzi Abadou (SBN 222567)
Eli R. Greenstein (SBN 217945)
Erik D. Peterson (SBN 257098)
580 California Street, Suite 1750
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001
rabadou@ktmc.com
egreenstein@ktmc.com
epeterson@ktmc.com

*Proposed Lead Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WOBURN RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OMNIVISION TECHNOLOGIES, INC., SHAW HONG, ANSON CHAN, and AURELIO "RAY" CISNEROS,<br><br>Defendants. | Case No. CV 11-5235-RMW<br><br>DAUPHIN COUNTY RETIREMENT BOARD'S NOTICE OF MOTION AND MOTION FOR (i) CONSOLIDATION OF RELATED ACTIONS; (ii) APPOINTMENT AS LEAD PLAINTIFF; AND (iii) APPROVAL OF ITS SELECTION OF LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>Date: February 10, 2012<br>Time: 9:00 a.m.<br>Courtroom: 6 – Fourth Floor<br>Judge: Honorable Ronald M. Whyte |
| LABORERS LOCAL 235 BENEFIT FUNDS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OMNIVISION TECHNOLOGIES, INC., SHAW HONG, ANSON CHAN, and RAY CISNEROS,<br><br>Defendants. | Case No. CV 11-5372-JSW |

| | |
|---|---|
| CARBON COUNTY RETIREMENT BOARD, Individually and on Behalf of All Others Similarly Situated,<br><br>                   Plaintiff,<br><br>   v.<br><br>OMNIVISION TECHNOLOGIES, INC., SHAW HONG, ANSON CHAN, and AURELIO CISNEROS,<br><br>                   Defendants. | Case No. CV 11-6593-HRL |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Dauphin County Retirement Board ("Dauphin") will and hereby does move, on February 10, 2012, at 9:00 a.m., in Courtroom 6 – Fourth Floor of the San Jose Courthouse, 280 South 1st Street, San Jose, CA 95113, for an order: (i) consolidating all related actions; (ii) appointing Dauphin as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, *et seq.*; and (iii) approving its selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as lead counsel for the class. This Motion is made on the grounds that Dauphin is the "most adequate plaintiff" pursuant to the PSLRA. 15 U.S.C. §78u-4(a)(3)(B). In support of this Motion, Dauphin submits herewith a Memorandum of Points and Authorities and the Declaration of Ramzi Abadou in Support of Dauphin County Retirement Board's Motion for (i) Consolidation of Related Actions; (ii) Appointment as Lead Plaintiff; and (iii) Approval of Its Selection of Lead Counsel ("Abadou Decl.").

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     PRELIMINARY STATEMENT**

Currently pending in this District are three related class actions (the "Related Actions"), brought on behalf of all investors who purchased OmniVision Technologies, Inc. ("OmniVision" or the "Company") securities between August 27, 2010 and November 6, 2011 (the "Class Period").[1] The Related Actions allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the PSLRA (15 U.S.C. §§78j(b) and 78t), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5), against OmniVision and certain of its executive officers.

---

[1] *Woburn Retirement System v. OmniVision Technologies, Inc., et al.*, No. CV 11-5235-RMW and *Laborers Local 235 Benefit Funds v. OmniVision Technologies, Inc., et al.*, No. CV 11-5372-JSW assert a class period of August 27, 2010 through October 13, 2011. *Carbon County Retirement Board v. OmniVision Technologies, Inc., et al.*, No. CV 11-6593-HRL asserts a class period of May 27, 2011 through November 6, 2011. Under the PSLRA, the longest class period – August 27, 2010 through November 6, 2011 – controls at the lead plaintiff stage. *See Bhojwani v. Pistiolis*, 2007 U.S. Dist. LEXIS 52139, at *14 (S.D.N.Y. 2007).

The Related Actions should be consolidated because they involve common issues of law and fact. *See* Fed. R. Civ. P. 42(a) ("Rule 42(a)"); §III.A, *infra*. After the Court's ruling on consolidation, Dauphin respectfully submits that it should be selected as lead plaintiff because, to the best of its knowledge, it has the largest financial interest in the relief sought by the class. *See In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002). In addition, Dauphin satisfies the applicable requirements of Fed. R. Civ. P. 23 ("Rule 23") because its claims are typical and it will fairly and adequately represent the class's interests. *Cavanaugh*, 306 F.3d at 730. Finally, in accordance with the PSLRA, Dauphin's selection of lead counsel should be approved. *See* §III.D, *infra*; 15 U.S.C. §78u-4(a)(3)(B)(v); *In re Cohen*, 586 F.3d 703, 709 (9th Cir. 2009).

## II.  STATEMENT OF FACTS

OmniVision is a Delaware corporation with its headquarters in Santa Clara, California. The Company designs and manufactures image sensors that are used in digital cameras. OmniVision's image sensors function by converting optical images into electronic signals. OmniVision is one of the leading manufacturers of complementary metal-oxide-semiconductor ("CMOS") sensors for use in mobile telephones. The Company offers a range of products including 5- and 8-megapixel mobile phone sensors capable of recording high-definition video. Prior to the beginning of the Class Period, OmniVision was the exclusive supplier of camera sensors for Apple Inc.'s ("Apple") iPhone 3GS and the iPhone 4, which were released in June 2009 and June 2010, respectively.

The Class Period begins on August 27, 2010 following OmniVision's announcement of its first fiscal quarter 2011 financial results. In this announcement (made after the markets closed on August 26, 2010), the Company touted the technological strength of its products and issued revenue guidance for the second fiscal quarter 2011 in the range of $220 million to $240 million. On November 30, 2011, OmniVision announced second fiscal quarter 2011 revenue of $239.5 million and issued revenue guidance for the third fiscal quarter in the range of $230 million to $250 million. The Company again touted the strength of its technology and noted that the sequential revenue growth was the result of the Company's "accelerating development of leading-edge imaging sensors."

On February 24, 2011, the Company announced third fiscal quarter 2011 revenue of $265.7 million and remarked that the "accomplishment underscores the best-in-class performance of [OmniVision's] image sensor technology and the resultant demand." The Company also provided guidance for the fourth fiscal quarter in the range of $240 million to $260 million. During its February 24, 2011 investor conference call, the Company touted its ability to stand out in a competitive landscape and noted that "if you look at our customer base and our split of different products running, with the latest technology we have, we feel very, very comfortable in the marketplace in whatever competitive landscape we come across."

On May 26, 2011, OmniVision reported fourth fiscal quarter revenue of $258.3 million and projected revenue in the range of $265 million to $285 million in the first fiscal quarter 2012. During the accompanying investor call, the Company's Chief Executive Officer, Shaw Hong, assured investors that OmniVision "ha[d] a leadership position in the advanced image sensor technology that helps drive all our target markets." The Company's Vice President of Worldwide Sales, Ray Cisneros, also noted that the "technology for [OmniVision's] new 8 megapixel sensor is being driven by demand from key customers, primarily in the smart phone market at the onset of the product launch."

Following the markets' close on August 25, 2011, OmniVision announced first fiscal quarter 2012 revenue of $276.1 million. The Company, however, issued guidance for second fiscal quarter 2012 of between $255 million and $275 million – significantly below analysts' expectation of $306 million. The Company's Chief Financial Officer, Anson Chan, explained that the disappointing guidance was the result of "the expansion of the development cycle with the 8-megapixel product line" and "macroeconomic uncertainties" affecting "various companies sales." When asked by an analyst whether the 8-megapixel delay would result in market share loss, Cisneros skirted the question and indicated:

> I can't comment for any individual customers and we don't break down the way we back into particular customers, but I can tell you this, that when we have our plans we work very closely with our customers. Our customers understand what our plans are. And so far we have a plan in place, and that's about the extent we could say on that.

Analysts understood that OmniVision's tepid guidance was the result of the Company's loss of its exclusive partnership with Apple. For example, a Needham & Co. analyst noted that "[t]he below than seasonal guidance reflects market share loss. It's clear now that Apple is dual-sourcing its image sensors with Sony." On this news, OmniVision's stock price plummeted over 30% – falling $7.55 per share to close at $17.27 per share on August 26, 2011.

On October 14, 2011, the iPhone 4S was officially released with an 8-megapixel camera. Industry experts, including Chipworks, dismantled several iPhone 4Ss in order to determine the manufacturers of the phone's components. Chipworks determined that the iPhone 4S used an image sensor manufactured by Sony – not OmniVision. Chipworks' investigation confirmed that OmniVision was no longer the exclusive image sensor supplier to Apple. On this news, OmniVision's stock price fell an additional $1.65 per share, or over 9%, to close at $15.95 per share on October 14, 2011. Then, on November 7, 2011, OmniVision announced that it was revising its second fiscal quarter 2011 revenue guidance to a range of $212 million to $217 million – down approximately 20 percent from previous guidance of between $255 million and $275 million. OmniVision noted that it reduced guidance because it "expects the business environment to remain volatile, especially in the consumer-oriented products market." On this news, OmniVision's stock fell an additional $3.05 per share, nearly 18%, to close at $14.35 per share on November 7, 2011.

**III. ARGUMENT**

    **A.     The Related Actions Should Be Consolidated**

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this title [] has been filed," courts shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. §78u-4(a)(3)(B)(ii); *see also Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1052 (N.D. Cal. 2010). There are at least three related securities class actions pending in this District on behalf of investors who purchased OmniVision securities during the Class Period:

| Abbreviated Case Name | Case Number | Date Filed |
|---|---|---|
| *Woburn Retirement System v. OmniVision Technologies, Inc., et al.* | CV 11-5235-RMW | 10/26/2011 |
| *Laborers Local 235 Benefit Funds v. OmniVision Technologies, Inc., et al.* | CV 11-5372-JSW | 11/04/2011 |
| *Carbon County Retirement Board v. OmniVision Technologies, Inc., et al.* | CV 11-6593-HRL | 12/21/2011 |

Under Rule 42(a), consolidation is appropriate where the actions involve common questions of law or fact. *See Hodges v. Immersion Corp.*, 2009 U.S. Dist. LEXIS 122565, at *3 (N.D. Cal. 2009). Here, the Related Actions present virtually identical factual and legal issues arising out of the same alleged course of misconduct and involve the purchase of OmniVision securities by investors at artificially inflated prices during the Class Period. Accordingly, consolidation is appropriate. *See id*.

### B. The PSLRA's Lead Plaintiff Provisions

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). First, the plaintiff that files the initial action must publish a notice within 20 days, informing class members of their right to file a motion for appointment as lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(A)(i). Second, within 60 days of the publication of notice, any person who is a member of the proposed class may apply to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. §78u-4(a)(3)(A)(i)(II).

Third, within 90 days after publication of notice, courts shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. §78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –
>
> (aa)   has either filed the complaint or made a motion in response to a notice…;

    (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

    (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *Cavanaugh*, 306 F.3d at 729-30.

  Here, notice was published on October 26, 2011. Abadou Decl., Exhibit ("Ex.") A. The notice advised investors, consistent with the PSLRA's 60-day deadline, that "Lead Plaintiff motion papers must be filed with the U.S. District Court for the Northern District of California no later than December 27, 2011." *Id.* Based on the publication of this notice, the time period in which class members may move to be appointed lead plaintiff in this case expires December 27, 2011. *See* 15 U.S.C. §78u-4(a)(3)(A)-(B).

  Pursuant to the PSLRA, and within the requisite time frame after publication of the required notice, Dauphin moves this Court to be appointed lead plaintiff on behalf of all members of the class. In addition, Dauphin has selected and retained counsel experienced in the prosecution of securities class actions to represent it and the class. *See* Abadou Decl., Ex. D. Accordingly, Dauphin satisfies the PSLRA's filing requirements and is entitled to have its application for appointment as lead plaintiff considered by the Court.

  **C.** **Dauphin Is the Most Adequate Plaintiff**

    **1.** **Dauphin Has the Largest Financial Interest in the Relief Sought by the Class**

  With losses exceeding $528,801 Dauphin has the largest financial interest in the relief sought by the class. *See* Abadou Decl., Exs. B-C; 15 U.S.C. §78u-4(a)(3)(B)(iii); *see also Cavanaugh*, 306 F.3d at 730. Dauphin is not aware of any other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest arising from the purchase of OmniVision securities during the Class Period.

    **2.** **Dauphin Satisfies the Requirements of Rule 23**

  In addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied: "(1) the class is so

numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Although Rule 23 includes four requirements, at this stage of the litigation, only a preliminary showing of typicality and adequacy is required. *See Cavanaugh*, 306 F.3d at 730; *Zhu*, 682 F. Supp. 2d at 1053 ("at this stage…the proposed lead plaintiff must make at least a preliminary showing that it meets the typicality and adequacy factor"). Here, Dauphin satisfies both requirements. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).

### a. Dauphin Is Typical

Typicality turns on "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Here, Dauphin is typical because, just like all other class members asserting claims under the Exchange Act, it: (1) purchased or otherwise acquired OmniVision securities during the Class Period; (2) at prices allegedly artificially inflated by defendants' materially false and misleading statements and/or omissions; and (3) suffered damages when corrective disclosures removed the inflation caused by defendants' conduct causing the price of OmniVision's securities to fall. *See id*. Thus, Dauphin's claims are typical of those of other class members because its claims and the claims of other class members arise out of the same course of events. *See* 7 Herbert B. Newberg, *et al*., *Newberg on Class Actions* §22.24 (4th ed. 2002) ("The majority of class action decisions support the view that when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is met.").

### b. Dauphin Is Adequate

Dauphin is also adequate. Under Fed. R. Civ. P. 23(a)(4), the representative parties must fairly and adequately protect the interests of the class. This requirement is met if "there are no conflicts between the representative and class interests and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation." *Zhu*, 682 F. Supp. 2d at

1053 (citing Rule 23(a)(4)). Dauphin satisfies both of these elements. First, there is no conflict between Dauphin and the class as both seek to recover losses caused by defendants' false and misleading statements. *Id*. Second, as explained below, Dauphin has selected highly qualified counsel with significant experience prosecuting class action lawsuits under the federal securities laws to represent the class. *See* §III.D, *infra*.

In addition to satisfying the preliminary requirements of Rule 23, the appointment of Dauphin as lead plaintiff also fulfills a critical legislative goal behind enacting the PSLRA – encouraging sophisticated institutions with large financial interests to serve as lead plaintiff in securities class actions. *See In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 601 (C.D. Cal. 2009) ("As the largest claimants, institutional investors are favored by the PSLRA's structure.") (citing *Cavanaugh*, 306 F.3d at 738); *see also* H.R. Conf. Rep. No. 104-369 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Dauphin is tasked with oversight of the defined benefit plan for current and retired Dauphin employees and has assets under management of approximately $170 million. Dauphin's sophistication assures the class that Dauphin will adequately litigate this action and supervise class counsel. Thus, Dauphin is clearly a suitable – and, indeed, preferred – lead plaintiff.

### D. The Court Should Approve Dauphin's Selection of Lead Counsel

Subject to Court approval, lead plaintiff movants are empowered to select and retain counsel to represent the class they seek to represent. 15 U.S.C. §78u-4(a)(3)(B)(v). A court should not disturb lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa); *see also Cavanaugh*, 306 F.3d at 734. Here, Dauphin has selected and retained Kessler Topaz to serve as lead counsel for the class. Kessler Topaz has extensive experience in securities litigation and is well qualified to represent the class. *See* Abadou Decl., Ex. D; *Cohen*, 586 F.3d at 709; *Andrade v. Am. Apparel, Inc.*, 2011 U.S. Dist. LEXIS 79795, at *51 (C.D. Cal. 2011) ("[Kessler Topaz] has been appointed sole or co-lead counsel in numerous complex securities class actions in this district and around the

1 country. The firm thus has experience litigating securities fraud class actions on behalf of individual investors, and its briefing to date indicates a familiarity with the applicable law."). Accordingly, the Court should approve Dauphin's selection of lead counsel for the class.

## IV. CONCLUSION

For the foregoing reasons, Dauphin respectfully requests that the Court: (i) consolidate all Related Actions; (ii) appoint Dauphin as lead plaintiff; and (iii) approve its selection of lead counsel.

Dated: December 27, 2011  Respectfully submitted,

KESSLER TOPAZ MELTZER
& CHECK, LLP

*/s/ Ramzi Abadou*
Ramzi Abadou
Eli R. Greenstein
Erik D. Peterson
580 California Street, Suite 1750
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*- and -*

Sean M. Handler
Darren J. Check
Naumon A. Amjed
Ryan T. Degnan
280 King of Prussia Road
Radnor, PA  19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Attorneys for Dauphin County Retirement Board and Proposed Lead Counsel*

# CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I also hereby certify that I caused to be served the attached document by United States Postal Service, proper postage paid, on the following who are not registered participants of the ECF System.

>   Azra Z. Mehdi
>   The Mehdi Firm
>   One Market, Spear Tower Suite 3600
>   San Francisco, CA 94105
>
>   Lester Rene Hooker
>   Saxena White P.A.
>   2424 N. Federal Highway Suite 257
>   Boca Raton, FL 33431
>
>   Lionel Z. Glancy
>   Michael Goldberg
>   Robert V. Prongay
>   Casey E. Sadler
>   Glancy Binkow & Goldberg LLP
>   1925 Century Park East, Suite 2100
>   Los Angeles, CA 90067
>
>   Marvin L. Frank
>   Katherine E. Smith
>   Murray Frank LLP
>   275 Madison Avenue, Suite 801
>   New York, NY 10016

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 27, 2011.

>   */s/ Ramzi Abadou*
>   Ramzi Abadou

MOTION FOR APPOINTMENT AS LEAD PLAINTIFF -10-
Case No. CV 11-5235-RMW

# Mailing Information for a Case 5:11-cv-05235-RMW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Rachel A. Avan**
  ravan@labaton.com

- **Cynthia A. Dy**
  cdy@wsgr.com

- **Christopher J. Keller**
  ckeller@labaton.com,cchan@labaton.com,electroniccasefiling@labaton.com

- **Angie Young Kim**
  aykim@wsgr.com

- **Michael Walter Stocker**
  mstocker@labaton.com,ejo@labaton.com,ElectronicCaseFiling@labaton.com

- **Nancy Tompkins**
  tompkins@kerrwagstaffe.com,bthomas@kerrwagstaffe.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`