1  BARRACK, RODOS & BACINE
   STEPHEN R. BASSER (121590)
2  sbasser@barrack.com
   SAMUEL M. WARD (216562)
3  sward@barrack.com
   600 West Broadway, Suite 900
4  San Diego, CA  92101
   Telephone:      (619) 230-0800
5  Facsimile:      (619) 230-1874

6  BRANSTETTER, STRANCH
       & JENNINGS, PLLC
7  J. GERARD STRANCH, IV
   gstranch@branstetterlaw.com
8  JAMES G. STRANCH, III
   jstranch@branstetterlaw.com
9  MICHAEL STEWART
   mikes@branstetterlaw.com
10 227 Second Avenue North, Fourth Floor
   Nashville, TN  37201-1631
11 Telephone:  (615) 254-8801
   Facsimile:  (615) 250-3937

13 *Co-Lead Counsel for Lead Plaintiffs Oakland County Employees' Retirement System,*
   *Laborers' District Council and Contractors' Pension Fund of Ohio, and Woburn Retirement*
14 *System and the Proposed Class*

15 [Additional counsel appear on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re OMNIVISION TECHNOLOGIES, INC. SECURITIES LITIGATION | Case No.:  5:11-cv-05235-RMW |
| | **LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| This Document Relates to: | |
| ALL ACTIONS. | |
| | **Judge:  Hon. Ronald M. Whyte** **Dept.:   Courtroom 6** Hearing Date:  **January 30, 2015** Hearing Time:  **9:00 a.m.** |

1

**NOTICE OF MOTION AND MOTION**

2

3          TO:  ALL PARTIES AND THEIR ATTORNEYS OF RECORD

4          PLEASE TAKE NOTICE that on January 30, 2015 at 9:00 a.m., or as soon thereafter as

5    counsel may be heard, plaintiffs Oakland County Employees' Retirement System, Laborers'

6    District Council and Contractors' Pension Fund of Ohio and Woburn Retirement System, the

7    Court appointed lead plaintiffs, (collectively "Lead Plaintiffs" or "Institutional Investors

8    Group") will move before the Honorable Ronald M. Whyte, United States Senior District Judge,

9    at the United States District Court, Northern District of California, San Jose Courthouse,

10   Courtroom 6, 4th Floor, 280 South 1st Street, San Jose, CA 95113, to grant preliminary

11   approval of the settlement and set forth in the Stipulation and Agreement of Settlement

12   ("Settlement Agreement"), dated December 30, 2014 and filed contemporaneously herewith.[1]

13         The Motion is based on the attached Memorandum of Points and Authorities In Support

14   Of Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Class Action

15   Settlement, filed herewith, the Settlement Agreement and exhibits thereto and such additional

16   evidence on argument as may be required by the Court.

17

18                        **MEMORANDUM OF POINTS AND AUTHORITIES**

19

20   **I.        PRELIMINARY STATEMENT**

21         Lead Plaintiffs, through Co-Lead Counsel Barrack, Rodos & Bacine ("Barrack") and

22   Branstetter, Stranch & Jennings, PLLC ("Branstetter") (together, "Co-Lead Counsel"), submit

23   this memorandum of points and authorities in support of their unopposed motion, pursuant to

24   Federal Rules of Civil Procedure 23(a), (b)(3), and (e), for preliminary approval of a proposed

25   $12.5 million settlement (the "Settlement") of this securities class action on behalf of a

26

27   _____

[1]     All capitalized terms used herein shall have the same meaning as set forth in the
Settlement Agreement.

28

proposed settlement class, as set forth in the Settlement Agreement entered into between Lead Plaintiffs and Defendants OmniVision Technologies, Inc. ("OmniVision" or the "Company"), Shaw Hong ("Hong"), Anson Chan ("Chan") and Aurelio "Ray" Cisneros ("Cisneros") (collectively "Defendants").[2]

For the reasons set forth below, Lead Plaintiffs respectfully submit that the Court should, in accordance with the accompanying [Proposed] Order Granting Preliminary Approval of Class Action Settlement and Directing Notice to the Settlement Class ("Preliminary Approval Order"):  (i) grant preliminary approval of the proposed Settlement on the terms set forth in the Settlement Agreement; (ii) certify, for purposes of settlement only, a class of all Persons who, during the period from August 27, 2010 through November 6, 2011, inclusive, (the "Class Period"), purchased or otherwise acquired shares of OmniVision's publicly traded common stock in the open market, and were damaged thereby (the "Settlement Class"); (iii) appoint Lead Plaintiffs as Class Representatives and Co-Lead Counsel as Class Counsel; (iv) approve the form and substance of the proposed Notice of Pendency of Class Action and Proposed Settlement ("Notice"), Proof of Claim and Release form ("Proof of Claim"), and the Summary Notice of Pendency of Class Action and Hearing on Proposed Settlement ("Summary Notice"), appended as Exhibits A-1, A-2 and A-3 to the proposed Preliminary Approval Order, as well as the manner of notifying the Settlement Class of the Settlement; (v) approve the appointment of Heffler Claims Group ("Heffler") as Claims Administrator; and (vi) schedule a hearing to determine (a) whether the Settlement and Plan of Allocation should be finally approved and (b) to determine Plaintiffs' Counsels' application for an award of attorneys' fees and reimbursement of costs and expenses ("Settlement Hearing").

Lead Plaintiffs respectfully submit that the Settlement is an excellent result for the Settlement Class, both quantitatively and when considering the risk of a lesser (or no) recovery if the case proceeded through dispositive motions and trial.  There were several significant risks

---

[2]      All capitalized terms used herein are defined in the Settlement Agreement and have the same meaning as set forth therein.  The Settlement Agreement is annexed as Exhibit 1 to the accompanying Declaration of Stephen R. Basser ("Basser Decl."), dated December 30, 2014.

to recovery in this matter.  **First**, Lead Plaintiffs faced substantial risks in establishing that many of Defendants' challenged statements and omissions were actionable as a matter of law. **Second**, Lead Plaintiffs faced substantial risks in establishing that the challenged statements were false and misleading at the time they were made or occurred.  **Third**, Lead Plaintiffs faced significant risks in proving that the alleged misstatements were made with the requisite *scienter*. **Fourth**, the alleged damages suffered by the proposed class were vigorously contested by Defendants.    **Fifth**, Defendants also vigorously contested and raised complex questions concerning the necessary element of loss causation.   For the reasons stated herein, Lead Plaintiffs respectfully request that the Court grant this unopposed Motion.

### A.    Description of the Action

On October 26, 2011, a class action complaint alleging violations of the federal securities laws against Defendants, captioned *Woburn Retirement System v. OmniVision, et al.*, No. 5:11-cv-05235 (RMW), was filed in this Court.  Thereafter, two additional actions were filed on November 4, 2011 and December 21, 2011, respectively.  On February 21, 2012, the Court appointed the Institutional Investors Group as Lead Plaintiffs and approved their selection of Barrack and Branstetter to serve as Co-Lead Counsel.  ECF No. 100 at 13.

On April 23, 2012, Lead Plaintiffs filed their Consolidated Class Action Complaint (the "Complaint"), which alleged securities fraud violations against Defendants.  ECF No. 105.  The Complaint alleged that during the Class Period the Defendants made materially false and misleading statements and material omissions in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder regarding the Company's CMOS image sensor technological advantage versus its competitors and consequent competitive position and lead with respect to its Tier One customers — particularly Apple — its development and mass production of 8 megapixel image sensors — specifically the OV8830 — and its forecasted revenues for its 2Q FY'12 (ending October 30, 2011). The Complaint alleged that these misrepresentations and material omissions deceived the market to believe that OmniVision was maintaining its exclusive, or at least dominant, position as the supplier of

CMOS image sensors to Apple's new smartphone offering that was going to be launched in 2011 and commonly referred to as the iPhone 4s. The Complaint further alleged that, as a result of Defendants' alleged misrepresentations, the price of OmniVision's common stock was artificially inflated during the Class Period, and that putative class members sustained losses and resulting damages when it was ultimately disclosed that OmniVision had lost its coveted and incumbent CMOS image sensor supply position with Apple to a competitor, Sony, regarding the 2011 Apple iPhone 4s.

On March 29, 2013, after extensive briefing and oral argument, the Court denied Defendants' Motion to Dismiss the Complaint, ruling that statements contained in analysts' reports of September 1, 2011 and September 20, 2011 that were alleged to be attributable to the Company were actionable as pleaded, while noting that a number of challenged statements made by Defendants during the broader Class Period were not actionable. ECF No. 145.

Defendants answered the Complaint on May 3, 2013 (ECF No. 147) and Lead Plaintiffs served initial discovery requests in the Action shortly thereafter. Lead Plaintiffs pursued, secured, and thoroughly reviewed a significant number of documents produced by Defendants and third parties, served and received from Defendants their written answers and supplemental answers to written interrogatories, consulted with representatives of Apple and a former Apple employee, completed two important substantive depositions, and were poised to take the imminent, scheduled depositions of key securities analysts and OmniVision witnesses, including Defendant Cisneros and OmniVision Chief Executive Officer Hong, when the Settlement was reached in the Action.

## B.    Settlement Discussions

During the initiation of the fact discovery phase of the litigation, the Parties agreed to mediate this Action before The Honorable Judge Layn Phillips (Ret.) ("Judge Phillips"), a former federal judge, in Newport Beach, California. The Settling Parties engaged in face-to-face formal mediation sessions in Newport Beach on December 5, 2013 and May 7, 2014.

Before and during the mediation process, Defendants produced, and Plaintiffs' Counsel reviewed, over 282,000 pages of documents identified by OmniVision as relating to the allegations in the Complaint. These documents included, *inter alia:* (i) Company emails; (ii) internal memoranda from OmniVision; (iii) corporate minutes of the Company's board of directors; (iv) Company submissions to the SEC; (v) the design and production cycle and related status and developments in connection with the Company's 8 megapixel OV8830 new product and forecasts; (vi) slide show presentations to OmniVision's board regarding its financial forecasts, operations, and projects; and (vii) investor relations related documents, including notes of statements to investors and analysts concerning OmniVision's customers, products and its progress regarding the OV8830. Lead Plaintiffs also secured and reviewed more than 125,000 pages of documents from third parties, including securities analysts that followed the Company, and pursued document discovery from OmniVision's customer, Apple.

Co-Lead Counsel also consulted with several experts regarding the design cycle, production and supply chain management of OmniVision's image sensor candidate for the Apple 2011 iPhone 4S and its technical development, as well as with regard to the issues of damages and loss causation attributable to the alleged false and misleading statements and material omissions. These experts analyzed a variety of materials and provided Co-Lead Counsel with a thorough understanding of issues related to liability and damages. In addition, Co-Lead Counsel conferred with representatives of Apple, including a former Apple employee who was intimately involved in the development of the Apple 2011 iPhone 4s and interfacing with OmniVision in that regard. Co-Lead Counsel completed the depositions of two witnesses, including a Rule (30)(b)(6) deposition of OmniVision given by its Vice President of Worldwide Sales and Defendant, Cisneros.

Throughout the mediation process, there were numerous issues about which the Settling Parties disagreed, including among other examples, whether: (i) Lead Plaintiffs could prove loss causation or recoverable damages flowing from the disparate pieces of news that entered the market on the alleged corrective disclosures; (ii) there was "truth-on-the-market" respecting

OmniVision's loss of its once incumbent exclusive image sensor supply position with respect to Apple's iPhone; (iii) statements contained in analyst reports dated September 1, 2011 and September 20, 2011 were actually made by the Defendants; (iv) any statements made or facts allegedly omitted by Defendants were materially false, misleading, or actionable; (v) any such statement was made with the requisite *scienter*; and (vi) or not any such challenged statement or omission impacted the trading price of OmniVision common stock.

The parties initially met for a mediation before Judge Philips on December 5, 2013, after the exchange of extensive pre-mediation statements that detailed the relative strengths and weaknesses of the parties' positions. While the December 5, 2013 mediation did not produce a settlement, the parties developed a better understanding of each other's positions by the end of the session. Judge Phillips continued to remain involved and held a second face-to-face mediation session in Newport Beach, California on May 7, 2014, at which time further vigorous arms-length negotiations ensued. Settlement discussions continued telephonically over the next several months, as further discovery was undertaken by both sides, until September 18, 2014, at which time the Settling Parties reached an agreement-in-principle to settle the Action.

## C. The Proposed Settlement

Pursuant to the proposed Settlement, OmniVision will deposit, or cause to be deposited, $12.5 million into an interest-bearing escrow account (the "Settlement Fund") no later than thirty (30) business days after both (i) the Court enters the Preliminary Approval Order, and (ii) Co-Lead Counsel has provided to counsel for the Defendants, Wilson Sonsini Goodrich & Rosati, all information necessary to effectuate a transfer of funds. In exchange for this payment, upon the Effective Date of the Settlement, Lead Plaintiffs and the Settlement Class will release all Released Claims against the Released Defendant Parties.

The Settlement, and the vigorous litigation of the Action that preceded it, reflects both the zealous advocacy by counsel on behalf of their respective clients and the civility and professionalism with which that zealous advocacy was undertaken.

Lead Plaintiffs and Co-Lead Counsel believe that the Settlement is an excellent result, and is in all respects fair, adequate, and reasonable.  As such, this unopposed motion for preliminary approval should be granted in its entirety.[3]

### D.    Proposed Schedule of Events

Co-Lead Counsel and Lead Plaintiffs request permission to provide notice of the Settlement to Settlement Class Members at this time.[4]  Lead Plaintiffs respectfully propose the following schedule for the various Settlement-related deadlines and events:[5]

| EVENT | DEADLINE |
| --- | --- |
| Mailing individual Notices and Proofs of Claim (the "Notice Date"): | *10 days after entry of Preliminary Approval Order*. |
| Publication of Summary Notice in *Investors Business Daily* and transmission over *PR Newswire*: | *Within 14 days of the Notice Date*. |

---

[3]    As set forth in the Stipulation, the average recovery per allegedly damaged share of publicly traded common stock of OmniVision would be $0.20 per allegedly damaged share before deduction of Court-approved fees and expenses, such as attorneys' fees and expenses and administrative costs, and approximately $0.14 per allegedly damaged share after deduction of the attorneys' fees and litigation expenses discussed below.  Had plaintiffs prevailed at trial on each of the claims set forth in the Consolidated Complaint, including those based on statements which the Court found were not actionable as a matter of law, Plaintiffs' Counsel believe that per share damages would have ranged between $0.63 per share and $4.27 per share depending on when the shares at issue were purchased and/or sold and reflecting the impact of certain corrective disclosures that occurred on August 25, 2011, October 14, 2011 and November 6, 2011.

[4]    Counsel for Defendants have indicated that, pursuant to the Class Action Fairness Act ("CAFA"), no later than ten (10) days after the Settlement Agreement is filed with the Court, the Settling Defendants shall serve proper notice of the proposed Partial Settlement upon the United States Attorney General and each State Attorney General. Simultaneously, the Settling Defendants shall provide a copy of such notice as well as proof of service of such notice to counsel for Lead Plaintiff.

[5]    This proposed schedule shall provide due process to Settlement Class Members with respect to their rights concerning the Settlement.  *See, e.g.*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993).

| Filing motions in support of the Settlement, the Plan of Allocation, and/or Plaintiffs' Counsels' application for an award of attorneys' fees and expenses: | *No later than 35 days before the Settlement Hearing.* |
|---|---|
| Submission of requests for exclusion from the Settlement Class or objections to the Settlement, Plan of Allocation, or the request for attorneys' fees and expenses: | *Received no later than 21 days before the Settlement Hearing.* |
| Filing reply papers in support of the Settlement, the Plan of Allocation, and/or Plaintiffs' Counsels' application for an award of attorneys' fees and expenses: | *No later than 7 days before the Settlement Hearing.* |
| Settlement Hearing: | At the Court's convenience, but *approximately 90 days after entry of the Preliminary Approval Order.* |
| Submission of Proofs of Claim: | *Postmarked or received no later than 120 calendar days after the Notice Date.* |

## II.  ARGUMENT

### A.    The Settlement Merits Preliminary Approval

Pursuant to Federal Rule of Civil Procedure 23(e), any compromise, voluntary dismissal or settlement of claims certified as a class action requires judicial approval.  Approval pursuant to Rule 23(e) is a two-stage process.  The Court must first determine whether to grant preliminary approval, order the dissemination of notice of the settlement to the class and establish a schedule for, *inter alia*, filing claims, hearing objections and hearing a motion for final approval.  *See, e.g., West v. Circle K Stores, Inc.*, No. CIV S-04-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006).  The Court's analysis of the terms of the settlement at this preliminary stage is limited and should not "resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

1    Following dissemination of notice to the Class, the Court then considers and evaluates

2    whether the Agreement is "fair, reasonable and adequate."  *Hanlon v. Chrysler Corp.,* 150 F.3d

3    1011, 1026 (9th Cir. 1998).  The Court's ultimate determination as to whether the settlement is

4    fair, reasonable and adequate will follow thorough briefing on, among others, the following

5    factors: the risk, expense, complexity, and likely duration of further litigation; the amount

6    offered in settlement; the stage of the proceedings; and the experience and views of counsel.

7    *See, Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

8    The Court's sound discretion in considering the preliminary approval of the Settlement is

9    tempered by the Ninth Circuit's "strong judicial policy that favors settlements, particularly

10   where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d

11   1268, 1276 (9th Cir. 1992); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

12   Indeed, "there is an overriding public interest in settling and quieting litigation," and this is

13   "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th

14   Cir. 1976).  *See also Grant v. Capital Mgmt. Servs., L.P.*, No. 10-CV-2471-WQH (BGS), 2013

15   WL 6499648, at *2 (S.D. Cal. Dec. 11, 2013 ("voluntary conciliation and settlement are the

16   preferred means of dispute resolution in complex class action litigation") (citations and internal

17   quotations omitted).

18   Preliminary approval of the Settlement should be granted if the Settlement falls within

19   the "***range of possible approval***" as "fair, adequate, and reasonable" so that notice can be given

20   to the proposed class and a hearing for final approval may be scheduled. *Andrews Farms v.*

21   *Calcot, Ltd.*, No. CV-F-07-0464 LJO DLB, 2011 WL 2923886, *14 (E.D. Cal. July 18, 2011)

22   (emphasis added); *Dirienzo v. Dunbar Armored, Inc.*, No. 09-CV-2745 DMS (JMA), 2011 U.S.

23   Dist LEXIS 36650, *3 (S.D. Cal. April 4, 2011) (same); Manual for Complex Litigation §13.14,

24   at 173 (4th ed. 2004) ("First, the judge reviews the proposal preliminarily to determine whether

25   it is sufficient to warrant public notice and a hearing.  If so, the final decision on approval is

26   made after the hearing.").

27

28

The Ninth Circuit has cautioned that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). *See also Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 363 (D. Ariz. 2009) (citations omitted) (same); *Morales v. Stevco*, No. 1:09-CV-00704 AWI, 2011 WL 5511767, *15 (E.D. Cal. Nov. 10, 2011) (same).

### B.   The Settlement is the Result of a Thorough, Rigorous, and Arm's-Length Process without Collusion

There is an initial presumption that a proposed settlement is fair and reasonable when it is "the product of arms-length negotiations." *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007). *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, *5 1997 (N.D. Cal. July 18, 1997); *aff'd* 151 F.3d 1234 (9th Cir. 1998) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place, create a presumption that the agreement is fair"); *see also, Torrisi*, 8 F.3d at 1375.

The settlement process, like the discovery phase of the litigation, was extensive and hard-fought. The settlement process itself coursed from approximately July 2012 through October 2014.  Before, during, and following the mediations that spanned over an extended period of time, the strengths and weaknesses of Lead Plaintiffs' and Defendants' respective claims and defenses were fully explored by the Settling Parties.  The two face-to-face mediations hosted by Judge Phillips focused on the many disputed issues of liability, falsity, scienter, loss causation, and damages. The Settling Parties also focused on whether Defendants made certain of the statements through the conduit of analysts, an assessment of the Court's March 29, 2013 ruling on Defendants' motion to dismiss, and whether Defendants could be held

liable for any statement given that they allegedly never mentioned or identified, directly or indirectly, Apple or the 2011 iPhone 4s, particularly given OmniVision's well-known and acknowledged non-disclosure and confidentiality agreement with Apple.  With an informed understanding of these various issues, the Settling Parties agreed to the Settlement.  There was no collusion, nor is there any preferential treatment of any Lead Plaintiff or any other Settlement Class Member.[6]

Co-Lead Counsel developed a thorough understanding of the facts of the case and merits of the claims through an extensive and thorough analysis of, *inter alia*:  (i) securities analysts' and media reports regarding OmniVision; (ii) confidential witness interviews; (iii) Defendants' and third parties' production of over 407,000 pages of discovery documents; (iv) consultation with industry and damages experts; (v) discussion with Apple representatives including a former Apple employee experienced in image sensor development and who was personally involved in the 2011 iPhone 4s image sensor process; (vi) the Rule 30(b)(6) deposition provided by defendant Cisneros on OmniVision's behalf; and (vii) the deposition of a former OmniVision investor relations consultant who produced spiral bound notebooks ostensibly memorializing Defendant Chief Financial Officer Chan's discussions with securities analysts and investors, including analysts who rendered the September 1, 2011 and September 20, 2011 reports the Court identified in its March 29, 2013 Order as containing potentially actionable statements; and (viii) the relevant jurisprudence and the application or impact of case law on Lead Plaintiffs' claims.

Importantly, the Settlement was achieved with the assistance of Judge Phillips, an experienced and highly regarded mediator.  Courts have recognized that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."

---

[6]    The proposed Plan of Allocation provides formulas for calculating the recognized claim of each Settlement Class Member, based on each such person's purchases and sales of OmniVision's publicly traded common stock during the Class Period and taking into account the impact of the alleged corrective disclosures.  The proposed plan of Allocation does not discriminate against any class member or treat them disproportionately.  Lead Plaintiffs will receive a distribution from the Net Settlement Fund based on the same formulas that apply to the recovery of all similarly situated members of the Settlement Class.

*Satchell v. Fed. Express Corp.*, No. C-03-2659-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see also Adams v. Inter-Con Sec. Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) (same). Here, Judge Phillips played an active role in addressing the relevant issues with the Settling Parties and bringing about the Settlement. Indeed, "the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation," provides further proof that approval is appropriate. *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003). *See also Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007) ("The settlement was negotiated and approved by experienced counsel on both sides of the litigation, with the assistance of a well-respected mediator with substantial experience … [and] this factor supports approval of the settlement.").

Additionally, throughout the Action, Lead Plaintiffs had the benefit of the advice of knowledgeable counsel with extensive experience in shareholder class action litigation and securities fraud cases. *See* Basser Decl., Exs. 2 and 3. Courts give considerable weight to the opinion of experienced and informed counsel. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."), *aff'd* 661 F. 2d 939 (9th Cir. 1981). *See also, e.g.*, *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA (JCS), 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement."). Therefore, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("OmniVision I") (citation and internal quotation marks omitted). In *Omnivision I*, the court held that the recommendation of counsel weighed in favor of settlement given their familiarity with the dispute and their significant experience in securities litigation. *Id*. Co-Lead Counsel likewise have a thorough understanding of the merits of the Action and

extensive experience in securities fraud litigation in particular.  Co-Lead Counsels' belief in the fairness and reasonableness of the Settlement warrants a presumption of reasonableness.

### C.    The Settlement is Well Within the Range of Reasonableness

"[A]t this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'"  *West*, 2006 WL 1652598, at *11 (citation omitted).   This Settlement is well within the range of reasonableness for several reasons.   First, the $12.5 million Settlement compares favorably to other securities fraud settlements.   As recently reported by NERA Economic Consulting, the median settlement amount in such cases was $9.1 million.  *See* Press Release, NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation Report Released by NERA: Large Settlements Get Larger, Small Settlements Get Smaller* (Jan. 21, 2014) (copy attached as Ex. 4 to Basser Decl.).

Second, the fairness and adequacy of the Settlement is underscored by taking into account the obstacles the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation.  *See, e.g.*, *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing risk, expense, complexity, and likely duration of further litigation as factors supporting final approval of settlement).   Indeed, at this juncture, the $12.5 million Settlement results in an immediate and substantial tangible recovery, without the considerable risk, expense, and delay of discovery, summary judgment motions, trial, and post-trial litigation.  *See, e.g.*, *In re Washington Pub. Power Supply Sys. Sec. Litig.*, MDL No. 551, 1988 WL 158947, at *4 (W.D. Wash. July 28, 1988) (finding settlement to be in the "best interests of the class . . . before it is subjected further to the vagaries of litigation").

Although Lead Plaintiffs believe that this case is meritorious, they would have faced considerable obstacles over the course of continuing the Action.   Specifically, there would be

substantial challenges regarding the actionability of statements, their falsity, *scienter*,[7] loss causation and damages.  Unlike many cases where there is no dispute as to what a defendant said, here the Defendants also raised a triable issue of fact regarding whether information contained in an analyst report of September 1, 2011 could be attributed to Defendant Chan.  Lead Plaintiffs would have been required to respond to Defendants' anticipated motion for summary judgment directed to both liability and damages issues and their likely attacks directed at class certification.

Additionally, even if Lead Plaintiffs were able to overcome all of these challenges, there would still have been a complex trial and likely appeals.  At the point of settlement, Lead Plaintiffs were in an excellent position to evaluate the strengths and weaknesses of their allegations against Defendants, the defenses raised thereto, and the substantial risks of continued litigation, because of, among other things, the considerable factual and legal research their counsel performed in connection with the motion to dismiss briefing and the extensive preparation work that was performed in connection with the extensive mediations, including thorough, extensive document review and the taking of substantive deposition testimony and preparing for the imminent depositions of CEO Hong, additional OmniVision witnesses and analysts.

From the inception of the Action, Defendants have vigorously denied (and continue to deny) all of the claims and arguments made by Lead Plaintiffs, including, among other things, that (i) the Individual Defendants made any false statement or acted with the requisite *scienter* in making any alleged false statements, and (ii) investor losses resulted from the alleged fraud, as opposed to other Company-specific news that also was released to the market.[8]  *See, e.g., In*

---

[7]  As the Ninth Circuit has recognized, assessing falsity and *scienter* is a "unitary inquiry" because these matters are often "strongly inferred from the same set of facts."  *In re Daou Sys., Inc., Sec. Litig*., 411 F.3d 1006, 1015 (9th Cir. 2005) (citations and internal quotation marks omitted).

[8]  *See, e.g., In re Scientific Atlanta, Inc. Sec. Litig*., 754 F. Supp. 2d 1339, 1376 (N.D. Ga. 2010) ("[I]n order to defeat summary judgment, plaintiffs in a securities fraud case must present evidence disaggregating the fraud and non-fraud-related causes of the plaintiff's loss.").

*re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (recognizing "the issues of *scienter* and causation are complex and difficult to establish at trial" and therefore concluding "settlement is a prudent course").

While Lead Plaintiffs vigorously disagree with Defendants' position, these complex loss causation and damages issues would, at the end of the day, hinge upon extensive expert discovery and testimony.  A trial would have entailed "a 'battle of experts,'" with "no guarantee whom the jury would believe."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001).

In view of the foregoing, the proposed Settlement represents an excellent resolution given the substantial risks of expense and delay of continued litigation versus the certain and immediate recovery for the Settlement Class.  *See, e.g.*, *Orvis v. Spokane Cnty.*, 281 F.R.D. 469, 475 (E.D. Wash. 2012) ("[T]he proposed benefit to class members appears to the Court to be within the range of fair and reasonable compensation given the uncertain outcome of the legal arguments and the risks and probable delay for Plaintiff and class members if litigation were to proceed toward trial."); *Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS (MDD), 2011 WL 6300050, at *5 (S.D. Cal. Dec. 15, 2011) (addressing preliminary approval and stating that "'[c]onsidering the potential risks and expenses associated with continued prosecution of the Lawsuit, the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation,' the Court finds that, on balance, the proposed settlement is fair, reasonable, and adequate.") (alteration in original) (citation omitted).

### D.   The Proposed Notice Program Satisfies Rules 23(d) and (e) as well as Due Process Requirements

Co-Lead Counsel propose that mailed and published notice be given in a form substantially similar to the Notice and Summary Notice, attached as Exhibits A-1 and A-3 to the proposed Preliminary Approval Order.  Notice to the Settlement Class in the form and in the manner set forth in the proposed Preliminary Approval Order will fulfill the requirements of due process and comply with the Federal Rules of Civil Procedure and the PSLRA.

Notice must be given to class members in the most practicable manner under the circumstances and must describe "'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *See, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)); *see also* Fed. R. Civ. P. 23(c)(2)(B).  In addition, pursuant to the PSLRA, "every settlement notice must include a statement explaining a plaintiff's recovery."  *In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 636 (S.D. Cal. 2008) (citing *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 969 (9th Cir. 2007)).  Lead Plaintiffs propose to give interested parties notice in two ways:  (i) by first-class mail, addressed to all Settlement Class Members who can reasonably be identified and located; and (ii) by publication notice in *Investors Business Daily* and transmission over *PR Newswire*.

The form and substance of the notice program are sufficient.  The proposed forms of notice describe the terms of the Settlement Agreement; the considerations that caused Lead Plaintiffs and Co-Lead Counsel to conclude that the Settlement is fair, adequate, and reasonable; the maximum attorneys' fees and expenses that may be sought; the procedure for requesting exclusion from the Settlement Class; the procedure for objecting to the Settlement; the procedure for participating in the Settlement; and the date and place of the Settlement Hearing.  *See Ching v. Siemens Indus., Inc.*, No. C 11-4838 MEJ, 2013 WL 6200190, at *6 (N.D. Cal. Nov. 27, 2013) (approving notice that "adequately describes the nature of the action, summarizes the terms of the settlement, identifies the class and provides instruction on how to opt out and object, and sets forth the proposed fees and expenses to be paid to Plaintiff's counsel and the settlement administrator in clear, understandable language").  The Notices will, when mailed and published as provided for in the Preliminary Approval Order submitted herewith, fairly apprise Settlement Class Members of the Settlement and their options with respect thereto, and fully satisfy all due process requirements.

Co-Lead Counsel also propose that the Court appoint Heffler as the Claims Administrator for the Settlement.  Heffler has the experience to efficiently and accurately act as

the claims administrator having administered hundreds of securities class action settlements.[9]

*See* Basser Decl., Ex. 5 (background information about Heffler).

### III.   THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS

####    A.    Standards Applicable to Class Certification

At the Settlement Hearing, the Court will be asked to grant final approval to the Settlement on behalf of the Settlement Class.  For that reason, it is appropriate for the Court to consider, at the preliminary approval stage, whether the certification of the Settlement Class is appropriate.  *See Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 TEH, 2008 WL 346417, at *2 (N.D. Cal. Feb. 7, 2008).[10]

Courts have acknowledged the propriety of certifying a class solely for purposes of a class action settlement.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Indeed, certification of a settlement class "'has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants.'"  *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 158 (S.D.N.Y. 2011) (quoting *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995)).   In the Ninth Circuit, "Rule 23 is to be liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing."  *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009) (citation and internal quotation marks omitted); *see also In re THQ Inc. Sec. Litig.*, No. CV-00-1783AHM(EX), 2002 WL 1832145, at *2 (C.D. Cal. Mar. 22, 2002) ("'[T]he

---

[9]    While the costs of administration of the settlement are dependent on the number of notices provided to class members, the number of claims filed, the complexity of those claims and a variety of other factors, Heffler Claims Administration estimates that, based on the number of estimated damaged claims and the proposed plan of allocation, costs of administration, which will be paid for out of the settlement fund, may fall between $250,000 and $275,000, approximately 2% of the settlement.

[10]    There are no material differences between the Settlement Class as defined in the Stipulation and the Class proposed in the Consolidated Complaint, nor are their material differences in the Released Claims and the claims alleged in the Consolidated Complaint.

law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws.'") (citations omitted).

A settlement class, like other certified classes, must satisfy all the requirements of Rule 23(a) and (b).  *See Hanlon*, 150 F.3d at 1022.  Nevertheless, the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class.  *See Amchem.*, 521 U.S. at 593 ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").[11]

The Action satisfies all the factors for certification.  Under Rule 23(a), a class may be certified if:  (i) it is so numerous that joinder of all members is impracticable; (ii) there are questions of law and fact common to the class; (iii) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (iv) the representative parties will fairly and adequately protect the interests of the class.  *See, e.g.*, *Sandoval v. Tharaldson Emp. Mgmt.*, No. EDCV 08-00482-VAP (OPx), 2009 WL 3877203, at *1 (C.D. Cal. Nov. 17, 2009). The proposed class additionally must fall within one of the three categories of class actions defined in Rule 23(b).  *See, e.g.*, *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 936 (9th Cir. 2009).

Lead Plaintiffs request that the Court preliminarily certify a class as follows: all Persons who purchased or otherwise acquired the publicly-traded common stock of OmniVision on the open market from August 27, 2010 through November 6, 2011, inclusive, and were damaged thereby, excluding those Persons expressly identified in ¶ 1.6 of the Settlement Agreement.

---

[11]    Manageability concerns that might preclude certification of a litigated class may be disregarded with a settlement class "because the settlement might eliminate all the thorny issues that the court would have to resolve if the parties fought out the case."  *Carnegie v. Household Int'l, Inc.*, 376 F. 3d 656, 660 (7th Cir. 2004) (citing *Amchem*, 521 U.S. at 620).

**B.**     **The Settlement Class Meets the Requirements of Rule 23(a)**

**1.**     **Rule 23(a)(1):  Numerosity**

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable.  "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class."  *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted).  There is no fixed number of class members which either compels or precludes the certification of a class.  *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994).  Indeed, the exact size of the class need not be known so long as "'general knowledge and common sense indicate that [the class] is large.'"  *Perez-Funez v. Dist. Dir., I.N.S.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984) (citation omitted).  In securities litigation, courts regularly find the numerosity requirement is satisfied with respect to putative purchasers of nationally traded securities on the volume of outstanding shares.  *See, Cooper Cos.*, 254 F.R.D. at 634 ("The Court certainly may infer that, when a corporation has millions of shares trading on a national exchange, more than 40 individuals purchased stock over the course of more than a year.  It is likely that thousands of people made such purchases.").

Here, there can be no dispute that the Settlement Class satisfies numerosity.  During the Class Period, OmniVision had approximately 57.6 million shares of common stock outstanding that were actively traded on the NASDAQ.  Common sense dictates that these shares were purchased by many hundreds of investors, making joinder impracticable.

**2.**     **Rule 23(a)(2):  Questions of Law or Fact are Common**

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  The Ninth Circuit construes this requirement "permissively," and has stated that that "[a]ll questions of fact and law need not be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019.  Securities fraud cases have long been found to satisfy the commonality requirement:

> The overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the "common question" requirement. Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

*Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975); *see also, In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 588 (N.D. Cal. 2009) ("Repeated misrepresentations by a company to its stockholders satisfy the commonality requirement of Rule 23(a)(2).").

Here, common questions of both law and fact abound. The central questions – whether Defendants' public statements were false and material and whether Defendants acted with the requisite mental state – are the same for all class members.

### 3.    Rule 23(a)(3): Lead Plaintiffs' Claims are Typical

Rule 23(a)(3) is satisfied where the claims of the proposed class representatives arise from the same course of conduct that gives rise to the claims of the other class members, and where the claims are based on the same legal theory. *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 680 (N.D. Cal. 1986). Rule 23(a)(3) does not require plaintiffs to show that their claims are identical on every issue to those of the class, but merely that significant common questions exist. *In re Syncor ERISA Litig.*, 227 F.R.D. 338, 344 (C.D. Cal. 2005). Differences in the amount of damages, the size or manner of purchase, type of purchase, and even the specific documents influencing the purchase will not render the claim atypical. *See, Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-02204-PHX-FJM, 2009 WL 2151838, at *4 (D. Ariz. July 17, 2009).

Lead Plaintiffs' claims are identical to those of the other Members of the Settlement Class. Like all Settlement Class Members, Lead Plaintiffs purchased OmniVision's publicly traded common stock at allegedly artificially inflated prices during the Class Period and claim to have suffered damages when Defendants' alleged material misstatements and omissions were revealed.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 4.      Rule 23(a)(4):  The Lead Plaintiffs are Adequate

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The proper resolution of this issue requires that two questions be addressed:  (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

Lead Plaintiffs all are sophisticated institutional investors who have and will continue to represent the interests of the Settlement Class fairly and adequately.  There is no antagonism or conflict of interest between Lead Plaintiffs and the proposed Settlement Class.  Lead Plaintiffs and Members of the Settlement Class share the common objective of maximizing their recovery from Defendants when considering the totality of the relevant circumstances.

In addition, Co-Lead Counsel have extensive experience and expertise in complex securities litigation and class action proceedings throughout the United States[12] and are well qualified and able to conduct the Action.  Therefore, Rule 23(a)(4) is satisfied.[13]

### C.      The Settlement Class Meets the Requirements of Rule 23(b)(3)

#### 1.      Common Questions of Law or Fact Predominate

Rule 23(b)(3) sets forth two requirements, the first being that the "questions of law or fact common to the members of the class predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*

---

[12]      *See* Lead Counsels' Firm Resumes (Basser Decl. at Exs. 2, 3)

[13]      Lead Counsel have and will continue to fairly and adequately represent the interests of the Settlement Class. Accordingly, Lead Counsel should be appointed as Class Counsel for the Settlement Class under Rule 23(g)(1).  *See, e.g.*, *Williams v. Costco Wholesale Corp.*, No. O2cv2003 IEG (AJB), 2010 WL 761122, at *6 (S.D. Cal. Mar. 4, 2010) (appointing as Class Counsel attorneys who, as here, have "extensive experience in class actions" and appeared "competent to represent the class").

*Prods.*, 521 U.S. at 623.  "'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'" *Hanlon*, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d ed. 1986)).  The predominance requirement is "readily met" in securities class actions.  *Amchem Prods.*, 521 U.S. at 625; *see also, Cooper Cos.*, 254 F.R.D. at 632 ("[S]ecurities fraud cases fit Rule 23 'like a glove.'") (citation omitted).

Common questions of law and fact predominate over individual questions in this Action because Defendants' alleged fraudulent statements and omissions affected all Settlement Class Members in the same manner (i.e., through public statements made to the market and documents publicly filed with the SEC).  Predominance of common questions generally will be found when, as here, "many purchasers have been defrauded over time by similar misrepresentations, or by a common scheme to which alleged non-disclosures related." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 492 (C.D. Cal. 2006) (citation omitted); *see also, In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, No. MDL-901, 1993 WL 144861, at *6 (C.D. Cal. Feb. 26, 1993) ("common issues predominate in federal securities actions where the proposed class members have all been injured by the same alleged course of conduct").

### 2.      A Class Action is a Superior Method of Adjudication

Finally, Rule 23(b)(3) also requires that the action be superior to other available methods for the fair and efficient adjudication of the controversy.  The rule lists several matters pertinent to this finding:

(A)      the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)      the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)     the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D); *see also Desai*, 573 F.3d at 937.  Each factor weighs in favor of superiority here.  *See, e.g.*, *McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 615 (S.D. Cal. 2007) (noting "class action is the superior method for fair and efficient adjudication" because individual suits would "'clog [ ] the federal courts with innumerable individual suits litigating the same issues repeatedly,'" the plaintiffs assert complex claims that would "be very costly to litigate," and each claim is for a "relatively small amount") (alteration in original) (citation omitted).

Further, without the settlement class device, Defendants could not obtain a class-wide release, and therefore would have little, if any, incentive to enter into the Settlement.  Certification of a class will allow the Settlement to be administered in an organized and efficient manner.  Accordingly, this Court should preliminarily certify the Settlement Class.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

**IV.    CONCLUSION**

2          For the foregoing reasons, Lead Plaintiffs respectfully request that the Court issue an

3    order substantially in the form of the proposed Preliminary Approval Order:  (a) preliminarily

4    certifying the Settlement Class; (b) preliminarily approving the Settlement; (c) holding that the

5    manner and form of notice set forth in the Preliminary Approval Order satisfies due process and

6    is the best notice practicable under the circumstances; (d) setting a date for the Settlement

7    Hearing; (e) approving the forms of the Notice, Proof of Claim, and Summary Notice;

8    (f) appointing Lead Plaintiffs as Class Representatives and Co-Lead Counsel as Class Counsel;

9    (g) appointing Heffler as claims administrator; and (h) ordering that notice substantially in the

10   form of the proposed Notice be given to the proposed Settlement Class.

11

12    DATED:  December 30, 2014              Respectfully submitted,

13                                          BARRACK, RODOS & BACINE
                                            STEPHEN R. BASSER (121590)
14                                          sbasser@barrack.com
                                            SAMUEL M. WARD (216562)
15                                          sward@barrack.com

16

17                                                /S/ STEPHEN R. BASSER
                                            _____
18                                               STEPHEN R. BASSER

19                                          600 West Broadway, Suite 900
                                            San Diego, CA  92101
20                                          Telephone:  (619) 230-0800
                                            Facsimile:   (619) 230-1874
21

22

23

24

25

26

27

28

1    BRANSTETTER, STRANCH &
JENNINGS, PLLC

2    J. GERARD STRANCH, IV
gstranch@branstetterlaw.com

3    JAMES G. STRANCH, III
jstranch@branstetterlaw.com

4    MIKE STEWART
mikes@branstetterlaw.com

5

6

7          /S/ J. GERARD STRANCH, IV
          J. GERARD STRANCH, IV

8

9    227 Second Avenue N, Fourth Floor
Nashville, TN  37201-1631

10   Telephone:   (615) 254-8801
Facsimile:    (615) 250-3937

11

12   *Co-Co-Lead Counsel for Lead Plaintiffs Oakland
County Employees' Retirement System, Laborers'
District Council Contractors' Pension Fund of
Ohio, and Woburn Retirement System and the
Proposed Settlement Class*

13

14

15   LABATON SUCHAROW LLP
JONATHAN GARDNER

16   jgardner@labaton.com
MARK S. GOLDMAN

17   mgoldman@labaton.com
CAROL C. VILLEGAS

18   cvillegas@labaton.com

19   140 Broadway
New York, NY  10005

20   Telephone:  (212) 907-0700

21   Facsimile:  (212) 818-0477
*Counsel for Lead Plaintiff Woburn Retirement*

22   *System*

23

24            **SIGNATURE ATTESTATION**

25      I attest under penalty of perjury that the concurrence in the filing of this document has
been obtained from its signatories.

26

27                    /S/  STEPHEN R. BASSER

28                    STEPHEN R. BASSER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28